IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01836-KLM

JEFFREY BERGER,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER, a Colorado municipal corporation,
ROBERT WHITE, Former Chief of Police, Denver Police Department, in his official and
individual capacities, and
DAVID QUINONES, Former Deputy Chief, Denver Police Department, in his official and
individual capacities,

     Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendants' **Motion to Dismiss Plaintiff's**

**Amended Complaint** [#16][1] (the "Motion").  Plaintiff filed a Response [#23] in opposition

to the Motion [#16], and Defendants filed a Reply [#26].  The Court has reviewed the

pleadings, the entire case file, and the applicable law and is sufficiently advised in the

premises.[2]  For the reasons set forth below, the Motion [#16] is **GRANTED**, as outlined

below.

_____

    [1]  "[#16]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the court's electronic case filing and management system
(CM/ECF).  This convention is used throughout this Order.

    [2]  This case has been referred to the undersigned for all purposes pursuant to
D.C.COLO.LCivR 72.2(d) and 28 U.S.C. § 636(c), on consent of the parties.  *See* [#18, #19, #20].

# I. Background

Plaintiff is an officer of the Denver Police Department ("DPD") and an active employee of Defendant City and County of Denver ("Denver"). *Am. Compl.* [#6] ¶¶ 1, 4.[3] At all times relevant to this lawsuit, Defendant Robert White ("White") was the Chief of Police for the DPD and Defendant David Quinones ("Quinones") was the Deputy Chief of Police for the DPD. *Id.* ¶¶ 5-6.

Plaintiff was hired as a law enforcement officer with the DPD in 1998 and has served in that capacity since then. *Id.* ¶ 9. Over the course of his career with the DPD, Plaintiff has received several accolades, including the Distinguished Service Cross, Superior Tactics Star, and Life Saving Award, as well as two letters of commendation. *Id.* ¶ 10. In 2015, Plaintiff took the Denver Civil Service Commission test for the position of Sergeant and placed twenty-second overall out of the sixty-one accepted applicants. *Id.* ¶ 11. This ranking, which is based on the test scores, traditionally determines the order in which the DPD promotes its officers, with the higher-ranked officers receiving their promotions first.[4] *Id.* ¶ 12. By September 2016, the twenty-one officers ahead of Plaintiff on the list had all been promoted, leaving Plaintiff as the highest-ranked candidate on the Sergeant promotion list. *Id.*

Plaintiff is married to Angela Simon ("Simon"), who served as a law enforcement officer with the DPD until her termination in October 2014. *Id.* ¶¶ 13-14. In October 2015,

---

[3] All well-pled facts from the Amended Complaint [#6] are accepted as true and viewed in the light most favorable to Plaintiff. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

[4] While not an official policy of the department, this is a well-established practice based on the history and pattern of the DPD. *Am. Compl.* [#6] ¶ 12.

Ms. Simon filed a wrongful termination and retaliation complaint against the DPD with the United States Department of Labor, Wage and Hour Division, alleging that the DPD retaliated against her for invoking her rights under the Family Medical Leave Act ("FMLA"). *Id.* ¶ 15. On September 6, 2016, Ms. Simon filed a complaint in the Denver District Court, asserting that the City and County of Denver and the DPD interfered with her FMLA rights, retaliated against her for her exercise of those rights, and breached her employment contract with them. *Id.* ¶¶ 16, 17. The City and County of Denver and the DPD were served with the complaint on November 22, 2016, and the lawsuit was removed to the United States District Court for the District of Colorado on December 16, 2016.[5] *Id.* ¶¶ 18-19.

On September 9, 2016, three days after filing her complaint in State Court, Ms. Simon, acting in a civilian capacity, attended a meeting with Commander Ronald Saunier ("Saunier") and Lieutenant Robert Wycoff ("Wycoff") of the DPD. *Id.* ¶ 16. At the time, Lt. Wycoff was an executive officer who reported directly to Defendant White, Chief of Police. *Id.* During that meeting, Ms. Simon briefly discussed the fact that her husband, Plaintiff, was on the Sergeant promotion list. *Id.* Roughly five hours after the conclusion of that meeting, Plaintiff was called into a meeting with Commander Saunier, who informed Plaintiff that he was being removed as acting Sergeant.[6] *Id.* Commander Saunier's stated reason for the decision was that Plaintiff's "Class 2," or self-initiated arrest, statistics were too low. *Id.* Commander Saunier also told Plaintiff that the order had come from above

---

[5] *See Simon v. City and County of Denver*, Civil Action No. 16-cv-03116-RPM.

[6] Plaintiff does not provide any information regarding when he was first promoted to acting Sergeant.

him, which Plaintiff avers implies that the order had come from either the Deputy Chief or Chief of Police, namely Defendants Quinones or White, respectively. *Id.*

Despite his removal as acting Sergeant, Plaintiff was sent to the DPD's "Sergeant's School" starting in November 2016. *Id.* ¶ 21. The 80-hour training course is required for every officer who has been or is about to be promoted to the rank of Sergeant. *Id.* Meanwhile, Plaintiff endeavored to raise his "Class 2" statistics, and by the end of 2016, he had the highest self-initiated arrest statistics in his detail. *Id.* ¶ 19. On his annual evaluation, given on January 15, 2017, Plaintiff received the highest classification given to DPD officers: "Distinguished Performance." *Id.* ¶¶ 20, 22. Plaintiff alleges that he was not counseled regarding his self-initiated arrest activity during this review, nor had any such counseling occurred at any point in his career, notwithstanding the September 2016 meeting with Commander Saunier. *Id.* ¶ 22.

In January 2017, Plaintiff was listed as a witness with discoverable information in Ms. Simon's wrongful termination lawsuit against the City and County of Denver. *Id.* ¶ 27. He was so listed by both parties to the suit on their respective Fed. R. Civ. P. 26(a)(1) disclosures ("Rule 26 Disclosures"). *Id.* Plaintiff does not allege, however, that he ever testified or provided other information in that case before it was resolved in favor of the City and County of Denver, pursuant to Fed. R. Civ. P. 56, on July 12, 2018. *Id.* ¶ 29. The Complaint [#1] currently before the Court was filed one week later, on July 19, 2018.

In February 2017, while Ms. Simon's lawsuit was ongoing, the DPD announced that there would be another promotional ceremony on March 17, at which time it was allegedly well understood that Plaintiff would be promoted to the rank of Sergeant. *Id.* ¶ 23. However, on March 4, 2017, Plaintiff was called into a meeting with Commander Saunier

and Defendant Quinones and was informed that he would not be promoted to the rank of Sergeant, despite being the highest-ranked officer on the Sergeant promotion list. *Id.* ¶ 24. Plaintiff alleges he is the first officer within the DPD who did not have any pending disciplinary action to be passed over for a promotion at the Sergeant level. *Id.* ¶ 25. Defendant Quinones, explaining the DPD's decision not to promote him, told Plaintiff that "while your stats have improved, I don't know which Officer I'm going to get if I promote." *Id.* ¶ 24. There is no further explanation of this statement provided in the Amended Complaint [#6]. Additionally, there is no mention of these statistics in the Denver Civil Service eligibility guidelines for the rank of Sergeant, nor had Plaintiff received any training regarding these statistics or their importance. *Id.* ¶ 26. Moreover, Plaintiff alleges that Defendants Quinones and White were aware that he was married to Ms. Simon, that Ms. Simon had pending litigation against the DPD and the City and County of Denver, and that he was likely to provide testimony in that litigation in support of Ms. Simon.[7] *Id.* ¶ 28.

In light of these allegations, Plaintiff asserts that he was passed over for a promotion in retaliation for his anticipated participation in his wife's FMLA claim brought against the DPD and the City and County of Denver. *Id.* ¶¶ 30-50. Plaintiff raises three claims for relief against Defendants White and Quinones, both in their individual and official capacities, and Defendant Denver: (1) a violation of Plaintiff's First Amendment right to free speech pursuant to 42 U.S.C. § 1983; (2) unlawful discrimination against Plaintiff resulting from his

---

[7] Defendants assert in the Motion [#16] that Defendants White and Quinones will deny any prior knowledge of Plaintiff's marriage to Ms. Simon, her pending litigation against the City and County of Denver, or the content of Ms. Simon's Rule 26 Disclosures in that litigation, but the Court may not consider these assertions in the context of adjudicating the present Rule 12(b)(6) Motion [#16]. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (stating that in the context of a Rule 12(b)(6) motion, Plaintiff's allegations are taken as true).

role as a testimonial witness in litigation pertaining to the FMLA, 29 U.S.C. § 2615(b)(3); and (3) unlawful discrimination against Plaintiff resulting from his role as an individual who was about to give information in connection with a proceeding under the FMLA, 29 U.S.C. § 2615(b)(2). *Id.* Plaintiff seeks damages as a result of these alleged violations. *Id.* at 10. Defendants, meanwhile, seek dismissal of all three claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. *Motion* [#16] at 1.

## II. Standard of Review

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary;

the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit Court of Appeals has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

### III. Analysis

### A. First Amendment

The Court first addresses Plaintiff's claim that Defendants "intentionally and willfully retaliated against" him for "his anticipated First Amendment protected speech in an effort to chill his free speech rights before he was able to make the speech." *Am. Compl.* [#6] ¶ 32. Plaintiff raises this claim pursuant to 42 U.S.C. § 1983, which provides that any person who "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 does not create any substantive rights—rather,

it provides only a right of action to remedy a violation of a right secured by the Constitution or laws of the United States. *Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1447 (10th Cir. 1990).

The Tenth Circuit recognizes two separate claims arising from First Amendment violations: (1) retaliation for engaging in protected speech; and (2) unlawful prior restraint prohibiting a citizen from making protected speech. *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010) ("A prior restraint claim is distinct from a retaliation claim because it is based on a restriction that chills potential speech before it happens, rather than an adverse action taken in response to actual speech." (internal quotation marks omitted)) (quoting *Arndt v. Koby*, 309 F.3d 1247, 1251 (10th Cir. 2002)). Because Plaintiff has failed to specify which specific § 1983 claim he intends to raise, instead seemingly attempting to raise both, *Am. Compl.* [#6] ¶ 32, the Court addresses each in turn.

### 1. Retaliation

First Amendment retaliation is "an adverse reaction taken in response to *actual speech*." *Brammer-Hoelter*, 602 F.3d at 1182 (emphasis added). The Supreme Court has held that a public employee has no cause of action, however, unless "the employee spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Whether an employee's speech meets this threshold requirement is a question of law for the court to decide. *See Connick v. Myers*, 461 U.S. 138, 146-47 (1983).

"A matter is of public concern . . . if it is of interest to the community, whether for social, political, or other reasons. By contrast, speech of purely personal interest, or involving internal personnel disputes, is not of public concern." *Arndt*, 309 F.3d at 1252

(internal citations and quotation marks omitted). In determining whether employee speech addresses matters of public concern, courts examine "the content, form and context of a given statement, as revealed by the whole record," bearing in mind that the court's object is to distinguish between "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." *Id.* (quoting *Connick*, 461 U.S. at 147-48).

Plaintiff does not, however, explicitly allege he made any actual speech, instead pleading only that he *anticipated* exercising his First Amendment rights by providing *future* testimony in Ms. Simon's pending lawsuit. *Am. Compl.* [#6] ¶ 31 (emphasis added). On its face, this deficiency is enough to dismiss the § 1983 retaliation claim as a matter of law. *See, e.g.*, *Sadwick v. Univ. of Utah*, No. 2:00-CV-412C, 2001 WL 741285, at *11 (D. Utah Apr. 16, 2001) (granting defendant's motion to dismiss First Amendment claim "because there has been no actual speech in this case"). However, Plaintiff does allege that Defendants White and Quinones were aware that Plaintiff was married to Ms. Simon and that he was likely to provide testimony in her lawsuit against the DPD. *Am. Compl.* [#6] ¶ 28. Taking these allegations as true, and drawing all reasonable inferences therefrom, it is possible to deduce that Plaintiff did, in fact, inform Defendants White and Quinones of his intention to testify. The question, then, is whether such speech is sufficient to sustain a § 1983 First Amendment retaliation claim.

In *Williams v. McCallin*, the Tenth Circuit considered whether an employee's stated intention to "make truthful statements to the media" regarding issues with his employer's new computer system—a matter that had already drawn public interest—constituted protected speech under § 1983. 439 F. App'x 707, 710-11 (10th Cir. 2011). The plaintiff

in that case framed the issue as "an unusual case of the public entity making the decision to terminate him not for speech he had made in the past but rather for speech it knew he would make in the future." *Id.* The court, however, was unpersuaded by this argument, stating in its affirmation of summary judgment for the defendants that it was "unaware of any authority from any court that recognizes such a right [against retaliation]." *Id.* Thus, "it is not always enough that [the speech's] subject matter could, in [certain] circumstances, be the topic of a communication to the public that might be of general interest." *Wilson v. City of Littleton*, 732 F.2d 765, 769 (10th Cir. 1984). Rather, "what is actually said on that topic must itself be of public concern." *Id.*

Here, Plaintiff alleges only that he anticipated testifying in Ms. Simon's lawsuit, which concerned a personal grievance she had with the DPD. Just as in *Williams,* Plaintiff's indication of his intention to testify is not a matter of public concern, even if his anticipated testimony was. Therefore, even if the Court were to draw all reasonable inferences from Plaintiff's allegations, he has not met the threshold requirement for a § 1983 retaliation claim as a matter of law.

Accordingly, the Motion [#16] is **granted** to the extent that Plaintiff's First Amendment retaliation claim is **dismissed with prejudice**. *See Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006))).

### 2.    Prior Restraint

A prior restraint on speech is conduct that restricts, or "chills," speech because of its content before the speech is communicated. *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1308 (10th Cir. 2009) (quoting *Brammer-Hoelter*, 602 F.3d at 1209). While prior restraints are not unconstitutional per se, any system of prior restraint faces "a heavy presumption against its constitutional validity." *SE Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975). As with a § 1983 retaliation claim, "the threshold inquiry in analyzing the constitutionality of a governmental restriction on employee speech is whether the particular speech at issue was on a matter of public concern." *Arndt*, 309 F.3d at 1252. Such an inquiry presents a question of law for the court to determine. *Id.*

In addition to the requirement that the anticipated speech involve a matter of public concern, the Supreme Court has provided that the following four elements must be proven to establish a traditional prior restraint claim: (1) the speaker must apply to the decision maker for approval before engaging in the proposed speech; (2) the decision maker must be empowered to determine whether the applicant should be granted permission on the basis of its review of the content of the proposed communication; (3) approval of the application requires the decision maker's affirmative action; and (4) approval is not a matter of routine, but involves appraisal of facts, the exercise of judgment, and the formation of an opinion. *SE Promotions*, 420 U.S. at 554 (internal quotation marks omitted).

Nevertheless, courts have found that more informal conduct can also rise to the level of a prior restraint, such as where an employer directs an employee not to speak on a certain subject matter. *Dirks v. Bd. of Cty. Comm'rs of Ford Cty.*, No. 15-CV-7997-JAR, 2016 WL 2989240, at *5 (D. Kan. May 24, 2016) (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67-68 (1963)). A prior restraint claim arises where such conduct is intended to

"chill" protected speech and the chilling effect is based on "an objectively justified fear of real consequences." *Brammer-Hoelter*, 602 F.3d at 1175 (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir. 2006)). However, mere "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).

Minimal relevant case law exists regarding a § 1983 prior restraint claim arising from informal conduct, given that most prior restraint claims involve judicial orders or administrative regulations "*forbidding* certain communications" prior to them being made. *Dirks*, 2016 WL 2989240, at *4 (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993) (internal quotation marks omitted) (emphasis in original)). One such case, however, is *Dirks v. Board of County Commissioners of Ford County*, in which the plaintiff had previously been a witness in a separate lawsuit involving allegations that his employer had stolen items from work sites the employer was contracted to clean up. 2016 WL 2989240, at *2. Prior to his deposition in that initial lawsuit, the plaintiff was told by his employer that he was going to have to "learn how to lie." *Id.* Later, his employer instructed him to invoke the Fifth Amendment at his upcoming deposition—which he did—lest he "lose his farm" over the matter. *Id.* at *2-3. The plaintiff was eventually terminated, and he subsequently brought a § 1983 prior restraint claim against his employer. *Id.* at *5. In response to the defendants' motion to dismiss, the court held that the plaintiff's allegations supported a plausible claim that his employer's informal conduct amounted to a prior restraint on his speech. *Id.*

In the present case, Plaintiff avers that Defendants' decision not to promote him while Ms. Simon's lawsuit was pending against the DPD was made in "an effort to chill" his

anticipated testimony in that suit and therefore constitutes a prior restraint on his speech. *Am. Compl.* [#6] ¶ 32. Given that Plaintiff has not pled any of the four elements traditionally required to bring a prior restraint claim,[8] the Court examines whether Defendants' informal conduct—namely, denying Plaintiff his promotion—amounted to an unlawful prior restraint on his speech. After careful consideration, the Court finds that it did not.[9]

Plaintiff fails to allege that Defendants told him not to testify, or that they threatened him with any consequences should he do so. In fact, Plaintiff doesn't allege any communication whatsoever between himself and Defendants regarding his future testimony, thereby distinguishing the present case from *Dirks*. Furthermore, the alleged conduct in question—being intentionally and willfully passed over for a promotion—had already taken place and therefore does not support Plaintiff's allegation that it was done in order to chill his future speech, since one cannot objectively justify fearing the coming of that which has already passed. The Court, however, recognizes that the potential consequences facing Plaintiff were not limited to a failure to promote, but may have included other adverse employment actions, such as termination. Nevertheless, Plaintiff does not allege Defendants threatened him with any such action, nor does he allege that he feared any additional consequences. So while the temporal proximity between Plaintiff being named as a potential witness and his failure to be promoted plausibly suggests that

---

[8] For example, Plaintiff does not allege he ever sought Defendants' permission to testify, nor that they were empowered to grant or deny such permission.

[9] As a matter of common sense, Plaintiff's assertion that Defendants' decision not to promote him chilled his anticipated testimony in support Ms. Simon but against Defendants is not entirely logical. It could just as well be asserted that Defendants' decision not to promote Plaintiff *encouraged* him to testify in support of his wife and against Defendants. Regardless, the Court performs the requisite legal analysis below.

the two events are causally connected, the absence of any threats or affirmative requests not to testify weighs against a finding that Defendants' conduct amounted to a prior restraint on his speech.

However, even if Defendants' failure to promote did amount to a prior restraint on Plaintiff's speech, his First Amendment claim still fails as a matter of law because Plaintiff fails to allege that his anticipated testimony would have involved a matter of public concern. When conducting the appropriate analysis, the Tenth Circuit has held that "speech of purely personal interest, or involving internal personnel disputes, is not of public concern."[10] *Arndt*, 309 F.3d at 1252. The Supreme Court, however, has held that "[e]xposing governmental inefficiency and misconduct is a matter of considerable significance." *Garcetti*, 547 U.S. at 425. Thus, "[i]n drawing the thin line between a public employee's speech which touches on matters of public concern, and speech from the same employee which only deals with personal employment matters, [the court] looks to the subjective intent of the speaker." *Workman v. Jordan*, 32 F.3d 475, 483 (10th Cir. 1994) (quoting *Schalk v. Gallemore*, 906 F.2d 491, 495 (10th Cir. 1990)).

Here, Plaintiff has not provided any details about his anticipated testimony or the underlying allegations in Ms. Simon's case. Without further factual allegations regarding his anticipated testimony, the Court cannot determine whether or not it would have involved a matter of public concern. As such, the Court finds that Plaintiff has not sufficiently alleged his prior restraint claim.

Accordingly, the Motion [#16] is **granted** to the extent that Plaintiff's First

---

[10] See Section III.A.1, *supra*, for additional authority regarding what constitutes a matter of public concern.

Amendment prior restraint claim is **dismissed without prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should only attach to a dismissal when plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").

## B.  FMLA

Plaintiff's second and third claims both allege that Defendants "retaliated and discriminated against [him] while [his wife's] case was still pending, for participating and providing future testimony in [Ms.] Simon's claims under the FMLA, by willfully and maliciously passing him over for a promotion, clearly deviating from pattern and practice." *Am. Compl.* [#6] ¶¶ 39, 46.

The FMLA, 29 U.S.C. §§ 2601-2654, provides that eligible employees of certain employers[11] have the right to take unpaid medical leave for a period of up to twelve work weeks in any twelve-month period for a serious health condition. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 959 (10th Cir. 2002). In addition to these prescriptive rights, the FMLA makes it unlawful for an employer to retaliate against an employee for exercising his rights under the FMLA, which includes the right to participate in another's FMLA claim without fear of retaliation. *Khalik*, 671 F.3d at 1193; *see also* 29 U.S.C. § 2615(b).

Retaliation claims under the FMLA are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Khalik*, 671 F.3d at 1193. In order to state a prima facie case of retaliation, the plaintiff must set forth

---

[11] Defendants do not dispute that the DPD, a publicly-funded entity, is subject to the rules and regulations of the FMLA.

plausible claims that "(1) [he] engaged in a protected activity; (2) [the defendants] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action."  *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318 (10th Cir. 2017) (quoting *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170-71 (10th Cir. 2006)).  While Plaintiff is not required to set forth a prima facie case for each element, he is required to set forth plausible claims.  *Khalik*, 671 F.3d at 1193.

The Tenth Circuit has held that a failure to promote qualifies as adverse employment action, *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007), and, as the Court stated above, Plaintiff makes a plausible assertion that the temporal proximity between his being named as a potential witness in his wife's lawsuit and the adverse employment action taken against him demonstrates that the two events are causally connected.  The Court, therefore, turns to the only remaining consideration: whether Plaintiff engaged in a protected activity.  To support his argument that providing future testimony qualifies as a protected activity, Plaintiff relies on § 2615(b) of the FMLA, which makes it unlawful for any person or employer "to discharge or in any other manner discriminate against any individual" because that person: ". . . (2) has given, or *is about to give*, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or (3) has testified, or *is about to testify*, in any inquiry or proceeding relating to any right provided under this subchapter."  29 U.S.C. § 2615(b)(2)-(3) (emphasis added).

### 1.    § 2615(b)(3) – "About to Testify"

The Court first considers Plaintiff's argument that "participating and providing future testimony" in Ms. Simon's lawsuit gives rise to a claim pursuant to § 2615(b)(3).  *Am.*

*Compl.* [#6] ¶ 39.  As Defendants rightly state in the Motion [#16], Plaintiff does not allege

that he "has testified" or was "about to testify" in Ms. Simon's lawsuit prior to its dismissal

on summary judgment.  *Motion* [#16] at 11.  Nor does Plaintiff allege he was served with

a subpoena to testify, listed as a deponent, deposed in discovery, or identified as a "may

call" witness in a final pretrial order.[12]  Thus, the Court is left examining whether Plaintiff's

being listed as a person with discoverable information on the respective parties' Rule 26

Disclosures is sufficient to find that Plaintiff was "about to testify" in that action.  *Am. Compl.*

¶ 27.  Given that the Tenth Circuit has not directly addressed this precise issue, the Court

relies on persuasive authority to find that such allegations are insufficient to support the

claim.

Defendants argue that the language "about to" suggests Congress intended for the

testimony in question to be "imminent and certain."  *Motion* [#16] at 11.  In *Ball v. Memphis*

*Bar-B-Q Co., Inc.*, the United States District Court for the Eastern District of Virginia was

tasked with interpreting what "about to" means within the context of the Fair Labor

Standards Act ("FLSA"), which makes it unlawful for an employer to discriminate against

anyone who is "about to testify" in an FLSA-related proceeding.  34 F. Supp. 2d 342, 345

(E.D. Va. 1999) (citing 29 U.S.C. § 215(a)(3)), *aff'd*, 228 F.3d 360 (4th Cir. 2000).  After

consulting Black's Law Dictionary, the court found that the term "'[a]bout' refers to

something that, while not necessarily imminent, is at least relatively certain and near in

time."  *Id.* at 345 (citing Black's Law Dictionary 7 (5th ed. 1979) (defining "about" as "near

in time, quantity, number, quality, or degree.  Substantially, approximately, almost, or

---

[12] The case was resolved on summary judgment prior to submission of a proposed pre-trial order.  *Motion* [#16] at 5.

nearly.")).  Given the parallel language and purposes of the FMLA and FLSA, the Court finds this interpretation of Congress' intent highly persuasive.

Accordingly, the Court considers whether being listed on Rule 26 Disclosures is sufficient to allege that Plaintiff's anticipated testimony was "relatively certain and near in time."  *See Ball*, 34 F. Supp. 2d at 345.  Rule 26(a)(1) requires that a party to a suit provide the opposing party with the names of each individual likely to have discoverable information.  Fed. R. Civ. P 26(a)(1)(A).  What a party does with that information is entirely his or her own prerogative.  Thus, absent additional facts alleging actual requests for information, being listed on a Rule 26 disclosure does not suggest that the listed individual is "relatively certain" to provide testimony, nor does it suggest that such potential testimony is "near in time."  It merely provides for the *possibility* that the listed individual will be asked to provide information or to testify, and, therefore, the Court finds that it does not qualify as a protected activity under § 2615(b)(3).  *See, e.g.*, *Lehman v. Aramark Healthcare Support Servs., LLC*, 630 F. Supp. 2d 388 (D. Del. 2009) (holding that the plaintiff, who was listed as a potential witness under Rule 26(a) in his colleague's FMLA lawsuit, had failed to demonstrate that he was entitled to relief because "being listed as a potential witness . . . is outside the protective scope of the FMLA").

In the present case, Plaintiff does not allege that he was about to testify, nor does he allege that he was scheduled, or even asked, to do so.  Rather, Plaintiff relies solely on the fact that he was listed on the parties' respective Rule 26 Disclosures to argue he was engaged in protected activity.  Being listed as a potential witness, however, does not support a plausible allegation that the Plaintiff was "relatively certain" to testify, or that his anticipated testimony was "near in time."  *See Ball*, 34 F. Supp. 2d at 345.  Indeed, the

parties had apparently completed discovery without taking Plaintiff's deposition testimony, a likely sign that his future in-court testimony was deemed unnecessary. As such, Plaintiff fails to show that he was engaged in protected activity under the FMLA and, therefore, fails to sufficiently allege FMLA retaliation.

Accordingly, the Motion [#16] is **granted** to the extent that Plaintiff's FMLA § 2615(b)(3) retaliation claim is **dismissed without prejudice**.[13] *See Reynoldson*, 907 F.2d at 127.

### 2.    § 2615(b)(2) – "About to Give Information"

As with Plaintiff's second claim for relief, Plaintiff also fails to state a claim on which relief may be granted pursuant to § 2615(b)(2), which requires that the plaintiff "has given, or is about to give, any information in connection with any inquiry or proceeding" under the FMLA. Given the allegations made in this case, the Court finds no discernable difference between these two claims and, therefore, applies the same reasoning as laid out regarding § 2615(b)(3), as analyzed above.

Accordingly, the Motion [#16] is **granted** to the extent that Plaintiff's FMLA §

---

[13] In Plaintiff's Response [#23] to Defendants' Motion [#16], Plaintiff notes that in the scheduling order issued in Ms. Simon's case, entered February 22, 2017, the defendants identified "her husband" as a person they anticipated deposing. *See* Civil Action No. 16-cv-03116-RPM, Doc #18 at 9. Because Plaintiff failed to allege this fact as a basis of his claim in his Amended Complaint [#6], the Court may not consider it in the context of adjudicating the present Rule 12(b)(6) Motion [#16]. *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."). Nevertheless, the Court recognizes that this fact may impact the Court's analysis. Therefore, in the interest of justice, the Court will grant leave to amend the Amended Complaint [#6] so as to address this and any other noted deficiencies, as stated in the Conclusion of this Order.

2615(b)(2) retaliation claim is **dismissed without prejudice**.[14]  *See Reynoldson*, 907 F.2d at 127.

## IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#16] is **GRANTED**.  Plaintiff's first claim (First Amendment retaliation) is **dismissed with prejudice** as to all Defendants.  Plaintiff's first claim (First Amendment prior restraint) is **dismissed without prejudice** as to all Defendants.  Plaintiff's second claim (FMLA § 2615(b)(3) retaliation) is **dismissed without prejudice**.  Plaintiff's third claim (FMLA § 2615(b)(2) retaliation) is **dismissed without prejudice**.

IT IS FURTHER **ORDERED** that Plaintiff may, if he so chooses, file a motion seeking leave to file a Second Amended Complaint which addresses his claims to the extent deficiencies are identified in this Order.  This motion must be filed **on or before July 2, 2019**.  If Plaintiff files a Second Amended Complaint, Defendants shall answer or otherwise respond in accordance with the Federal Rules of Civil Procedure.  If no motion seeking leave to amend is filed by the above date, the Court will close this case without further notice.

Dated:  June 11, 2019.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

[14]  *See supra* note 13.